| | | |
|---|---|---|
| YALE NEW HAVEN HOSPITAL, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:18-CV-1230(JCH) |
| v. | : | |
| | : | |
| ALEX M. AZAR II, Secretary, | : | |
| United States Department of Health | : | JULY 25, 2019 |
| and Human Services, | : | |
| Defendant. | : | |

**RULING ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION (DOC NO. 16) AND PLAINTIFF'S
MOTION FOR LEAVE TO FILE A SUR-REPLY (DOC. NO. 26).**

## I.      INTRODUCTION

Plaintiff, Yale New Haven Hospital ("YNH"), brought this action against

defendant, Alex M. Azar II, Secretary of the United States Department of Health and

Human Services, pursuant to Title XVIII of the Social Security Act, section 1395 et seq.

of title 42 of the United States Code ("Medicare Act"), and the Administrative Procedure

Act ("APA"), section 551 et seq. of title 5 of the United States Code.  Complaint

("Compl.") ¶ 1.  YNH seeks, inter alia, (1) an order reinstating its appeal of the Centers

for Medicare and Medicaid Services ("CMS") policy concerning Disproportionate Share

Hospital ("DSH") payments to merged hospitals under Medicare for the 2014 Federal

Fiscal Year ("FFY"); (2) an order invalidating said policy; (3) an order requiring the

Secretary to recalculate YNH's DSH payment for FFY 2014; and (4) the issuance of a

writ of mandamus requiring the same recalculation.  See Compl. at 24.

Before the court is the Secretary's Motion to Dismiss for Lack of Subject Matter

Jurisdiction ("Mot. to Dismiss") (Doc. No. 16) and YNH's Motion for Leave to File a Sur-

Reply (Doc. No. 26).  For the reasons stated below, the Motion to Dismiss is granted in part and denied in part, and the Motion for Leave to File a Sur-Reply is denied.

## II.    STANDARD OF REVIEW

### A.    F.R.C.P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it."  Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  The plaintiff bears the burden of proving the existence of subject matter jurisdiction.  Id.  In determining whether the plaintiff has met this burden, the court must accept as true all factual allegations in a complaint and draw all reasonable inferences in favor of the plaintiff.  Carter v. Healthport Techs., LLC, 882 F.3d 47, 57 (2d Cir. 2016); Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005).  In addition, a district court "may refer to evidence outside the pleadings" when resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Makarova, 201 F.3d at 113.

### B.    Statutory Preclusion

The Administrative Procedure Act "embodies the basic presumption of judicial review to one 'suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute."  Abbott Labs. v. Gardner, 387 U.S. 136, 140 (1967), abrogated on other grounds, Califano v. Sanders, 430 U.S. 99 (1977).  Therefore, "[i]n determining whether a statute precludes judicial review, the court must heed the APA's basic presumption of judicial review that will not

2

be cut off unless there is persuasive reason to believe that such was the purpose of Congress." Texas All. for Home Care Servs. v. Sebelius, 681 F.3d 402, 408 (D.C. Cir. 2012). "The presumption favoring judicial review of administrative action," however, "is just that—a presumption" and, "like all presumptions used in interpreting statutes, may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Id. (quoting Block v. Cmty. Nutrition Inst., 467 U.S. 340, 349 (1984)).

## III.   STATUTORY BACKGROUND

The Medicare Act establishes a system of insurance for qualifying beneficiaries. See 42 U.S.C. § 1395c. The Medicare program is administered by the Secretary through CMS and its contractors. 42 U.S.C. § 1395kk. The Medicare program is split into five parts: A, B, C, D, and E. Relevant to this case, CMS pays providers, including YNH, for covered services under Part A. In 1983, Congress adopted the inpatient prospective payment system ("IPPS") to reimburse providers for inpatient hospital operating costs. See Social Security Amendments of 1983, Pub.L. No. 98–21, 97 Stat. 65 (1983). Under the IPPS, CMS makes payments to providers for operating costs based on nationally applicable rates, subject to certain payment adjustments. One such adjustment is the DSH payment.

As part of the Patient Protection and Affordable Care Act ("ACA"), Congress enacted the Uncompensated Care DSH ("UC DSH") payment system. See 42 U.S.C. § 1395ww(r). Pursuant to the UC DSH payment system, beginning in FFY 2014, a

disproportionate share hospital[1] received two DSH payments. The first payment was equal to 25% of the amount due to the hospital under the DSH system that existed prior to the enactment of the ACA. The second payment, known as the UC DSH payment, is the hospital's share of 75% of the national total DSH payment, calculated using a methodology outlined in section 3133 of the ACA. Under the new methodology, CMS calculates the UC DSH payment for each eligible hospital based on the product of three factors: Factors 1, 2, and 3. Factor 3, which is the only factor relevant in this case, is equal to a fraction, where the numerator is

> the amount of uncompensated care for [an eligible] hospital for a period selected by the Secretary (as estimated by the Secretary, based on appropriate data (including, in the case where the Secretary determines that alternative data is available which is a better proxy for the costs of subsection (d) hospitals for treating the uninsured, the use of such alternative data)),

and the denominator is "the aggregate amount of uncompensated care for all [eligible] hospitals that receive a payment . . . for such period (as so estimated, based on such data)." 42 U.S.C. § 1395ww(r)(2)(C). Put simply, Factor 3 is equal to each eligible hospital's uncompensated care, stated as a percentage of the total national uncompensated care for all qualifying hospitals. Compl. ¶ 24.

CMS calculates UC DSH payments in advance of each FFY, as part of the annual IPPS rulemaking. Id. ¶ 25. CMS uses historical data to estimate UC DSH payments. For FFY 2014, CMS used data submitted by hospitals for the 2010 and

---

[1] Under the Medicare Act, hospitals that serve "a significantly disproportionate number of low-income patients" receive additional payments under 42 U.S.C. § 1395ww(d)(5)(F)(i)(I). A hospital that receives this payment is known as a "disproportionate share hospital (DSH)," and the payment is known as the "DSH adjustment." Mem. in Supp. at 4.

4

2011 Medicare cost reports, depending on which reporting period yielded more recent data.  <u>Id.</u> ¶ 26.

Central to the pending Motion to Dismiss is that the ACA includes a review preclusion statute, codified at section 1395ww(r)(3) of title 42 of the United States Code, that limits judicial review of the Secretary's DSH payment estimates.  <u>See</u> 42 U.S.C. § 1395ww(r)(3).  The preclusion statute states:

> There shall be no administrative or judicial review under section 1395ff of this title, section 1395oo of this title, or otherwise of the following:
>
> (A) Any estimate of the Secretary for purposes of determining the factors described in paragraph (2).
>
> (B) Any period selected by the Secretary for such purposes.

<u>Id.</u>  The question before the court is whether this provision precludes judicial review of the Secretary's actions in calculating the UC DSH payment.

## IV.    FACTS

YNH merged with another hospital, Hospital of Saint Raphael ("HSR"), effective September 12, 2012.  Compl. ¶ 35.  As a result of the transaction, YNH assumed HSR's Medicare provider agreement, and HSR's CMS certification number ("CCN") was subsumed under YNH's CCN.  <u>Id.</u>  In the IPPS Proposed Rule for FFY 2014, CMS announced its proposed methodology to calculate UC DSH payments for FFY 2014.  <u>Id.</u> ¶ 36; <u>see</u> 78 Fed. Reg. 27,486.  CMS did not mention, in either the preamble or text of the proposed rule, that it intended to change from the prior policy of calculating post-merger Medicare payments using data from both the surviving and non-surviving hospital.  Compl. ¶ 36.  Furthermore, in the data table published by CMS with the FFY

2014 IPPS Proposed Rule, data for both YNH and HSR appeared, and a projected UC DSH payment was calculated for both hospitals.[2] Id. ¶ 37.

YNH did not submit a comment to CMS on the calculation of FFY 2014 UC DSH payments. Id. at ¶ 38. However, another hospital, which, like YNH, had completed a merger during the relevant time period, submitted a comment noting its concern that CMS had "calculated Factor 3 using only the surviving hospital's cost report data," and "requesting that [CMS] account for the merger and include both hospitals' data." Id. ¶ 39. CMS responded to that comment, in its publication of the IPPS Final Rule, that Factor 3 would be calculated using only the surviving hospital's data, because use of such data was "consistent with the treatment of other IPPS payment factors." Reply at 9. YNH contacted CMS to request a correction rule be issued to include the data of both parties to a merger in calculating Factor 3. Compl. ¶ 40. CMS declined. Id. As a result, CMS excluded the inpatient days from HSR when calculating YNH's FFY 2014 UC DSH payment. Id. ¶ 41.[3]

YNH timely appealed its FFY 2014 UC DSH payment through a letter dated January 24, 2014. Id. ¶ 48. The appeal was dismissed for lack of jurisdiction, based on the preclusion statute, and the CMS Administrator has not responded to an appeal of that dismissal. Id.

---

[2] Both YNH and HSR, standing alone, qualified for UC DSH payments. Compl. ¶ 38.

[3] In the FFY 2015 IPPS proposed and final rules, CMS again changed its policy regarding calculation of Factor Three, choosing to combine the data of both hospitals in a merger "until all data for the merged hospitals [became] available under the surviving CCN." Compl. ¶¶ 45, 47. CMS did not issue any correction or retroactive adjustment to DSH payments under the FFY 2014 policy. Id. ¶ 47.

**V.     DISCUSSION**

YNH alleges six claims against the Secretary.  Counts I, II, and III arise under the Medicare Act and the APA.  Compl. at 20–22.  Count IV is brought pursuant to the mandamus statute, Count V pursuant to the All Writs Act, and Count VI under the Due Process Clause of the United States Constitution.  Id. at 22–23.  The Secretary argues that all of the claims are subject to dismissal.

A.     Medicare and APA Claims (Counts I, II, and III).

In Count I, YNH alleges that the Secretary violated the APA and the Medicare Act by calculating the UC DSH payment "without including HSR's data."  Id. ¶ 57.  In Count II, YNH alleges that "[t]he FFY 2014 Merged Hospital Policy and the Hospital's FFY 2014 DSH payment are procedurally unlawful and should be set aside because that payment was calculated using the FFY 2014 Merged Hospital Policy, which the Secretary did not adopt properly under the APA and the Medicare Act."  Id. ¶ 60.  In Count III, YNH alleges that the FFY 2014 Merged Hospital Policy and YNH's resultant DSH payment "are unsupported by substantial evidence in the record."  Id. ¶ 65.  The court first addresses Counts I and III, before discussing Count II separately.

1.     Counts I and III

The Secretary argues that this court lacks jurisdiction over YNH's claims brought pursuant to the Medicare Act and the APA because YNH seeks to challenge "precisely what Congress insulated from judicial review."  Mem. in Supp. at 11.  The Secretary argues that (1) the plain text of the preclusion statute bars YNH's claims, and (2) the purpose of the DSH statute, and case law concerning other Medicare preclusion provisions, confirm that YNH's claims are barred.  Id. at 12, 18.  YNH responds that

(1) the preclusion provision does not apply to its challenge to the Secretary's failure to use "appropriate data," and (2) the preclusion provision does not apply to YNH's challenge to the Secretary's FFY 2014 policy because the policy is a rule of general application. Mem. in Opp. at 28, 31.

While courts employ a strong presumption in favor of permitting review of administrative action, that presumption is overcome where "congressional intent to preclude judicial review is 'fairly discernible in the statutory scheme.'" Block v. Cmty. Nutrition Inst., 467 U.S. 340, 351 (1984). The Secretary argues that Congress expressly stated such an intent in the review preclusion statute at issue in this case. See Mem. in Supp. at 12. As is relevant to this Ruling, the DSH preclusion provision bars review under the Medicare Act's process for redetermination of benefits, through the Provider Reimbursement Review Board, "or otherwise," of "any estimate of the Secretary" for the purposes of determining any of the DSH payment factors. See 42 U.S.C. § 1395ww(r)(3).

The Secretary argues that the plain language of the preclusion statute applies to all of YNH's claims because the Hospital is arguing that, "when the Secretary calculated [YNH's] Factor Three, the numerator—itself an estimate—should have been 116,507 rather than 94,496." Mem. in Supp. at 13. YNH responds that "the agency action that the Hospital is challenging does not come within the scope of the plain reading of the preclusion statute." Mem. in Opp. at 3. YNH argues that it is challenging neither a protected "estimate" or "period," but rather the Secretary's "failure to use any of the 'appropriate' data for hospitals that merged into another hospital to calculate the surviving hospitals' [Factor Three numerator]." Mem. in Opp. at 28–29. YNH attempts

to draw a fine distinction between "the Secretary's act of estimating"—which it concedes falls within the preclusion statute—and "the portion of the data that the Secretary failed to consider." Id. at 29.

The D.C. Circuit considered a similar argument in Florida Health Sciences Center v. Secretary of Health and Human Services, 830 F.3d 515 (D.C. Cir. 2016). In Florida Health, a hospital sought to challenge the Secretary's decision to use Medicaid data from March 2013 in calculating DSH payments, and the Secretary's denial of the hospital's attempt to submit data from April 2013. See Florida Health, 830 F.3d at 517–18. On appeal from the district court's dismissal for lack of subject matter jurisdiction, the hospital argued that it was challenging "the Secretary's reliance on inappropriate data, not her methodology for estimating uncompensated care." Id. at 519. The D.C. Circuit held that it could not "review the data that underlie the Secretary's estimate" because "a challenge to the data would eviscerate the bar on judicial review." Id. Finding that the underlying data were "'indispensable' and 'integral' to, and 'inextricably intertwined' with, the Secretary's estimate," the D.C. Circuit concluded that the preclusion statute applied, and that it lacked jurisdiction to consider the hospital's challenge. Id.

YNH attempts to distinguish Florida Health by arguing that the plaintiff in that case was seeking to challenge the Secretary's choice of a "period." Mem. in Opp. at 30. However, the decision in Florida Health was based on a broader interpretation of what was being challenged in that case. The D.C. Circuit viewed the hospital as challenging the "underlying data on which the Secretary relied" and, applying the reasoning from a case in which the court had "rejected the categorical distinction between inputs and

9

outputs," concluded that it could not hear a challenge to the data underlying the Secretary's decision.  See <u>Florida Health</u>, 830 F.3d at 519 (citing <u>Texas Alliance for Home Care Services v. Sebelius</u>, 681 F.3d 402 (D.C. Cir. 2012)).  Because YNH, like the plaintiff in <u>Florida Health</u>, seeks to challenge "the Secretary's reliance on inappropriate data," <u>see</u> <u>id.</u>, the reasoning of the <u>Florida Health</u> court is applicable here, notwithstanding any distinction between a challenge to a "period" and "estimate."

YNH also argues that this case is distinguishable from <u>Florida Health</u> because "the link between the action challenged and the estimate" is more attenuated in this case than in <u>Florida Health</u>.  See Mem. in Opp. at 30.  The Factor Three numerator, which YNH is challenging, is defined as "the amount of uncompensated care for [an eligible] hospital for a period selected by the Secretary (as estimated by the Secretary, based on appropriate data.[)]"  42 U.S.C. § 1395ww(r)(2)(C).  YNH is challenging the Secretary's application of a policy, during FFY 2014, of counting only one hospital's "amount of uncompensated care" when two hospitals merged during the relevant period.

The court sees no distinction between YNH's challenge to "the Secretary's application of a patently unlawful policy that caused the Secretary to ignore [appropriate data]," Mem. in Opp. at 30, and a challenge to the Secretary's data underlying its estimate of Factor Three, <u>see</u> <u>Florida Health</u>, 830 F.3d at 519.  Just as in <u>Florida Health</u>, the choice of underlying data is "inextricably intertwined" with the Secretary's estimate of Factor Three.  <u>See</u> <u>id.</u>  The Secretary cannot estimate without data.  YNH's argument to the contrary is unpersuasive.  The court concludes that review of the data underlying

the Secretary's admittedly unreviewable estimates, as sought in Count I and Count III of the Complaint, is barred.

Cognizant of the bar on direct challenges to the Secretary's estimates, YNH argues that the preclusion statute does not apply because the Hospital is challenging a rule of general application. See Mem. in Opp. at 31. YNH argues that preclusion statutes do not apply to "challenges to [an agency's] unlawful practices and polices" when the challenges are "'collateral' to the judicially-precluded determination." Id. (citing McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 498, (1991) (citing in turn Bowen v. Michigan Acad. of Family Physicians, 476 U.S. 667, 680 (1986)).

The Secretary counters by arguing that YNH may not pursue a procedural challenge "solely in order to reverse an individual decision" that would otherwise be unreviewable. Reply in Supp. at 4 (quoting Florida Health, 830 F.3d at 521). The Secretary further argues that YNH's procedural claim is not collateral because YNH "is not challenging any procedure that is separate from (or collateral to) the outcome [it] desires; accepting [YNH's] claim would necessarily provide the Hospital with its preferred outcome." Id. at 5.

A similar challenge to the Secretary's determination of DSH payments was raised in a recent case before the D.C. Circuit. See DCH Reg'l Med. Ctr. v. Price, 257 F. Supp. 3d 91, 93 (D.D.C. 2017) ("DCH I"), aff'd sub nom. DCH Reg'l Med. Ctr. v. Azar, 925 F.3d 503 (D.C. Cir. 2019) ("DCH II"). The plaintiff in DCH challenged the "Secretary's Fiscal Year 2014 Factor 3 methodology as arbitrary and capricious, constituting an abuse of discretion, and otherwise not in accordance with law." See Complaint, DCH I (Doc. No. 1) ("DCH Compl.") at 3. The plaintiff argued that CMS

ignored public comments that highlighted the negative impact of counting only the surviving hospital CCN in calculating a Factor Three estimate. Id. ¶¶ 38–41. The plaintiff sought vacatur of the Secretary's FFY 2014 Factor 3 calculation as to itself and remand for redetermination using data that incorporated both the surviving and non-surviving hospitals involved in a merger. Id. at 16. The district court concluded that the plaintiff's claims were barred by the preclusion statute and that, "[t]o the extent that DCH attempt[ed] to reframe its challenge as a procedural objection to the general rule that led to the Secretary's estimate," the court was unpersuaded. DCH, 257 F.Supp.3d at 93–94.

The D.C. Circuit affirmed, concluding that (1) "a challenge to the methodology for estimating uncompensated care is unavoidably a challenge to the estimates themselves," DCH II, 925 F.3d at 506, and (2) the plaintiff's "proposed distinction between methodology and estimates would eviscerate the statutory bar." Id. Finding that it could not "review the Secretary's method of estimation without also reviewing the estimate," the D.C. Circuit concluded that "the two are inextricably intertwined, [and that therefore] section 1395ww(r)(3)(A) precludes review of both." Id. at 507.

In this case, YNH has made its procedural challenge clearer than the plaintiff in DCH, and the relief it seeks is, on its face, broader than that sought in DCH. Compare DCH Compl. at 16 (requesting that the court "[v]acate the Secretary's Fiscal Year 2014 Factor 3 calculation for Plaintiff"), with Compl. at 24 (seeking, inter alia, an order from this court invalidating the FFY 2014 Merged Hospital Policy as a whole). However, the violations alleged in Counts I and III are focused on (1) calculation of a payment without HSR's data and (2) a lack of evidence "in the record" to support the FFY 2014 Merged

Hospital Policy.  YNH also seeks "an order instructing the Secretary to [1] recalculate [YNH's] FFY 2014 UC DSH payment after including the HSR data, and [2] pay the Hospital the additional amount due."  See Compl. at 24.

YNH relies on McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479 (1991) and other similar cases to support its argument that its claims are not barred by the preclusion statute.  See Mem. in Opp. at 31–33.  In McNary, the Supreme Court concluded that a preclusion statute barring judicial review of the agency's "determination respecting an application" for a special immigration status did not preclude "general collateral challenges to unconstitutional practices and policies used by the agency in processing applications."  Id.

The court concludes, however, that YNH's claims in Counts I and III are not "general collateral challenges to unconstitutional practices and policies used by the agency."  See McNary, 498 U.S. at 492.  Unlike McNary, where the plaintiffs' Complaint "d[id] not challenge any individual determination of any application," id. at 488, and like the plaintiff in DCH, the "indisputable gravamen" of YNH's claims in Counts I and III is that "the Secretary improperly calculated the amount of uncompensated care for [YNH]." See DCH I, 257 F.Supp.3d at 94.  YNH's Complaint alleges that the Secretary's failure to include YNH's preferred data "caused the Hospital's FFY 2014 payment to be understated by approximately $5,465,859."  Compl. ¶ 1.  The foundational complaint is that "[e]xclusion of an entire subsumed hospital's data caused the Hospital's FFY 2014 UC DSH payment" to be understated.  Id. ¶ 2.  Because the court concludes that YNH's arguments in Counts I and III are raised "solely in order to reverse an individual . . . decision," judicial review of the claims is barred to the same extent that the

13

preclusion statute bars review of the Secretary's individual determination of YNH's

Factor Three estimate.  See Florida Health, 830 F.3d at 521.[4]

For the reasons stated above, the court concludes that the preclusion statute

applies to bar YNH's claims in Counts I and III of the Complaint, which claims seek

review or adjustment to the Secretary's estimates of YNH's DSH payments.

2.      Count II

In Count II, YNH alleges that the Secretary adopted the FFY 2014 Merged

Hospital Policy in a manner which violated the procedural requirements of the APA and

the Medicare Act.  Compl. ¶ 60.  YNH alleges that the Merged Hospital Policy:

> (a) was set forth for the first time in the FFY 2014 IPPS Final Rule and was
> not presented in the FFY 2014 IPPS Proposed Rule or any earlier proposed
> rule, (b) was not the logical outgrowth of any policy presented in the FFY
> 2014 IPPS Proposed Rule or any other earlier proposed rule, (c) was not
> adopted as a regulation through notice-and-comment rulemaking, and (d)
> deviated from long-standing agency policy without explanation or
> justification.

Id. ¶ 61.

The Secretary argues that "it is clear that Plaintiff cannot obtain review under the

APA or the Medicare Act."  Mem. in Supp. at 22.  In support of preclusion, the Secretary

argues that review under the Medicare Act is available "only to the extent that the

statute provides," and that the judicial review provisions of the APA are inapplicable to

---

[4] YNH's argument that this case is distinguishable from Florida Health because the challenge in Florida Health was "specific [to] the one hospital in that action" is unpersuasive.  See Mem. in Opp. at 33. As the Secretary notes, the policy challenged in Florida Health—the use of data from April 2013 instead of March 2013—was a policy of general application.  See Reply in Supp. at 4 n.2.  Like the FFY 2014 Merged Hospital Policy YNH challenges here, the Secretary's policy regarding the applicable period applied to all hospitals.  The fact that the effects of a general policy may be uniquely felt by an individual plaintiff do not transform a general policy into an individual adjudication.

the extent a preclusion provision applies.  See id. at 22–23 (citing 5 U.S.C. § 701(a)(1) (noting APA review provisions apply except to the extent that "statutes preclude judicial review")).  The court agrees, but that does not answer the question before the court: whether the preclusion provision encompasses procedural aspects involved in the adoption of the rule that governed the determination by the Secretary of the "estimates." See 42 U.S.C. § 1395ww(r)(3).

The Medicare Act requires the Secretary to establish rules, requirements, and policies by regulation, including notice and opportunity for public comment.  See 42 U.S.C. §§ 1395hh(a)(2), (b)(1).  In a recent decision, the Supreme Court noted that section 1395hh(a)(2) requires "notice and a 60-day comment period—for any 'rule, requirement, or other statement of policy . . . that establishes or changes a substantive legal standard governing the scope of benefits [or] the payment for services . . . under [Medicare].'"  Azar v. Allina Health Servs., 139 S. Ct. 1804, 1809 (2019) (quoting 42 U.S.C. § 1395hh(a)(2)).  The Allina Court held that the notice and comment requirement extends, at least in some cases, to informal statements of policy and interpretive rules. Id. at 1814 ("[T]he phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) . . . cannot bear the same construction as the term 'substantive rule' in the APA.  We need not, however, go so far as to say that the hospitals' interpretation, adopted by the court of appeals, is correct in every particular [circumstance].").  In this case, the change in FFY 2014 Merged Hospital Policy as alleged in the Complaint "change[d] a substantive legal standard governing the scope of benefits [or] the payment for services" under the Medicare Act, because it changed the standard governing the size of UC DSH payments to eligible hospitals.

15

The court notes that there was no preclusion provision at issue in <u>Allina Health</u>, and the D.C. Circuit has held that review of a policy or rule is precluded where such a rule or policy is "integral to" a nonreviewable determination. <u>See</u> <u>Texas All. for Home Care Servs. v. Sebelius</u>, 681 F.3d 402, 411 (D.C. Cir. 2012). In <u>Texas Alliance</u>, plaintiffs challenged a regulation requiring suppliers of durable medical equipment to meet certain financial standards that would be defined in future requests for bids. <u>Id.</u> at 405–06. The plaintiffs alleged that the Secretary violated the notice and comment requirements of the Medicare Act and the APA by determining "bidders' financial eligibility without first specify[ing] by regulation the applicable financial standards." <u>Id.</u> at 408 (internal quotations omitted). The D.C. Circuit held that review of the financial standards was precluded by a review preclusion provision which, <u>inter alia</u>, barred review of "the awarding of contracts under this section" and "the bidding structure and number of contractors selected under this section." <u>See</u> <u>id.</u> at 409–11.

The D.C. Circuit concluded that "[t]he financial standards, as eligibility criteria, are integral to the bidding structure the Secretary has erected." <u>Id.</u> at 411. Because the financial standards were "inextricably intertwined" with the nonreviewable bidding structure, the preclusion provision encompassed review of the financial standards. <u>See</u> <u>id.</u> As noted above, the D.C. Circuit similarly held that a plaintiff's claim was precluded in <u>Florida Health</u>, where the plaintiff sought to review the Secretary's choice of data underlying the DSH estimate, <u>see</u> <u>Florida Health</u>, 830 F.3d at 519, and in <u>DCH II</u>, where the plaintiff "sought to challenge the methodology adopted and employed by HHS to calculate the third factor bearing on its DSH additional payment," <u>DCH II</u>, 925 F.3d at 505.

However, unlike YNH's claims in Counts I and III of the Complaint, and unlike the claims alleged in Texas Alliance, Florida Health, and DCH, Count II does not challenge the Secretary's estimate of YNH's DSH payment, any of the underlying data, or the Secretary's choice of such data. Instead, it is a challenge to the procedure by which the Secretary established the FFY 2014 Merged Hospital Policy. See Compl. ¶ 61 (alleging that "[t]he FFY 2014 Merged Hospital Policy is procedurally unlawful . . . because, inter alia, it . . . was set forth for the first time in the FFY 2014 IPPS Final Rule and was not presented in the FFY 2014 IPPS Proposed Rule or any earlier proposed rule"). Unlike the plaintiff in DCH, YNH is not "simply trying to undo the Secretary's estimate of its uncompensated care by recasting its challenge to that estimate as an attack on the underlying methodology." DCH II, 925 F.3d at 508. Indeed, the claims which seek to do so have already been dismissed.

While Congress no doubt cast a wide net in precluding judicial review of any estimate of UC DSH payments (or of any data, policy, or decision integral to such an estimate), it was equally clear in requiring that the Secretary adhere to notice-and-comment rulemaking in promulgating regulations. If Congress intended to preclude review of any rule which might ultimately lead to an estimate, it could have said so. See Knapp Medical Center v. Hargan, 875 F.3d 1125, 1127 (citing to preclusion provision of the Stark Law, 42 U.S.C. § 1395nn(i)(3)(I), barring review of Secretary's established process and "the establishment of such process"). Instead, Congress chose to limit the preclusion provision to any "estimate" of the Secretary. The court concludes that the statutory bar on judicial review applicable to the Secretary's DSH estimates does not

extend so far as to bar a claim, like that raised in Count II, alleging a failure to conform with the most basic requirements of notice as required by the Medicare Act.

While other courts have concluded that certain preclusion provisions extend to review of general rules, those cases are distinguishable. In <u>Texas Alliance</u>, the D.C. Circuit concluded that a preclusion provision barred review of a financial standards regulation. The preclusion provision at issue in that case barred review of, <u>inter alia</u>, "the establishment of payment amounts . . . ; the awarding of contracts under this section; [and] . . . the bidding structure and number of contractors selected under this section." <u>Texas All.</u>, 681 F.3d at 409 (quoting 42 U.S.C. § 1395w-3(b)(11)).

The D.C. Circuit concluded that the "financial standards are indispensable to 'the awarding of contracts' as such standards determine whether or not a contract may be awarded to a bidder based on the financial documents submitted with its bid." <u>Id.</u> at 409–10 (D.C. Cir. 2012). The D.C. Circuit also concluded that "[t]he financial standards, as eligibility criteria, are integral to the bidding structure the Secretary has erected." <u>Id.</u> at 411. Therefore, the bar on review stemmed not from the general preclusion of review as to the "payment amounts" under the subsection, but rather under the separate bars as to review of the "awarding of contracts" and the Secretary's bidding structure. By contrast, the preclusion statute at issue in this case is limited to "estimates" and "periods." While there is no doubt that the "estimates" themselves, and the data underlying them, are integral to the determination of UC DSH payments, the same cannot be said of the general rule underlying those estimates. The preclusion statute at issue here simply does not include a bar on the Secretary's "estimate structure." In that

sense, it is much more similar to the subsection of the preclusion statute in <u>Texas</u> <u>Alliance</u> barring review of "the establishment of payment amounts."

This court recognizes that this is a very close question. The preclusion of any "estimate" can be argued, as the Secretary does, to include anything that results in the "estimate." However, YNH is seeking review of the <u>promulgation</u> of the Secretary's rules and policies, separate from the <u>substance</u> of any such rules or policies or the determination of its estimates based on the substance of those rules or policies. There is a presumption of review. Congress has demonstrated it knows how to encompass the process of establishing rules within the ambit of preclusion provisions, <u>see</u> 42 U.S.C. § 1395nn(i)(3), but did not include such language in this preclusion statute.

The court therefore concludes that it has jurisdiction to hear YNH's procedural challenge to the promulgation of the FFY 2014 Merged Hospital Policy as violative of the notice and comment requirements of the Medicare Act and the APA, pursuant to section 1395oo of title 42 of the United States Code.[5] The Motion to Dismiss Count II is denied.

B. <u>Ultra Vires Doctrine</u>

YNH argues that, even if some of its claims fall within the preclusion statute, the Secretary's acts were <u>ultra vires</u>, and review of agency actions taken beyond statutory authority are always reviewable. <u>See</u> Compl. ¶¶ 58, 63, 66, 68 (arguing that the

---

[5] Section 13955oo(f)(1) of title 42 of the United States Code provides that, "[p]roviders shall have the right to obtain judicial review of any final decision of the [Provider Reimbursement Review] Board," and that "A decision of the Board shall be final unless the Secretary, on his own motion, and within 60 days after the provider of services is notified of the Board's decision." 42 U.S.C.A. § 1395oo (West). Here, the Provider Reimbursement Review Board issued a decision dismissing the Hospital's appeal for lack of jurisdiction based on the preclusion statute, on May 30, 2018. <u>See</u> Mem. in Supp. at 19.

preclusion statute "does not, and could not, preclude review of ultra vires agency action, whether substantive or procedural").  "An agency action is open to judicial review, even in the face of an applicable preclusion statute, when it 'patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute.'"  Fresno Cmty. Hosp. & Med. Ctr. v. Azar, No. CV 18-867 (CKK), 2019 WL 1003593, at *9 (D.D.C. Feb. 28, 2019) (quoting Hunter v. Fed. Energy Reg. Comm'n, 569 F.Supp.2d 12, 16 (D.D.C. 2008)).  To challenge agency action as ultra vires, a plaintiff must show "a patent violation of agency authority."  Florida Health, 830 F.3d at 522; Franklin Cty. Employment & Training Admin. v. Donovan, 707 F.2d 41, 44 (2d Cir. 1983) (declining to entertain jurisdictional challenge to agency action where there was no showing of "ultra vires act or 'patent violation of agency authority'"); see also Briggs v. Bremby, 792 F.3d 239, 246 (2d Cir. 2015) (noting that regulations contrary to statute would be ultra vires, because "no agency regulation can overturn a clear statutory mandate").  A violation is "patent" where it is "obvious or apparent." Florida Health, 830 F.3d at 522 (citation and alteration omitted).

In cases where a preclusion statute bars a subset of agency decisions, but the plaintiff claims that the challenged actions are beyond the agency's statutory authority, "the determination of whether the court has jurisdiction is intertwined with the question of whether the agency has authority for the challenged action, and the court must address the merits to the extent necessary to determine whether the challenged agency action falls within the scope of the preclusion on judicial review."  Amgen, Inc. v. Smith, 357 F.3d 103, 113 (D.C. Cir. 2004); Fresno Cmty. Hosp., 2019 WL 1003593, at *9.  This

court therefore addresses the merits of YNH's <u>ultra</u> <u>vires</u> argument to the extent necessary to determine whether it has jurisdiction to hear YNH's claim.

YNH argues that the 2014 Merged Hospital Policy was <u>ultra</u> <u>vires</u>.  The Secretary argues that YNH "fundamentally misunderstands the nature of <u>ultra</u> <u>vires</u> review" by conflating whether the Secretary had statutory authority to take an action with the separate question of whether the Secretary exercised that power in a procedurally proper manner.  Reply in Supp. at 7.  The court agrees with the Secretary.

The Second Circuit has differentiated <u>ultra</u> <u>vires</u> and arbitrary and capricious review.  <u>See</u> <u>United States Dep't of Interior v. 16.03 Acres of Land, More or Less,</u> <u>Located in Rutland Cty., Vt.</u>, 26 F.3d 349, 355 (2d Cir. 1994) (holding that arbitrary and capricious review and <u>ultra</u> <u>vires</u> review "are clearly distinct").  In <u>16.03 Acres</u>, the Second Circuit noted the different roles of reviewing courts in addressing claims of arbitrary and <u>ultra</u> <u>vires</u> actions:

> [T]he courts' role in applying the "ultra vires" standard is limited to examining the four corners of the statute that gives the officials the power to act and determining whether the officials have complied with the statute's language. On the other hand, the "arbitrary, capricious, or bad faith" standard necessitates an analysis of <u>the</u> <u>manner</u> in which the officials exercised their authority.

<u>16.03 Acres</u>, 26 F.3d at 355 (emphasis in original).

Here, YNH's substantive <u>ultra</u> <u>vires</u> challenge is centered on CMS' alleged failure to include the data from HSR in YNH's UC DSH calculation.  <u>See</u> Compl. ¶¶ 57–58. This substantive claim is, in effect, an argument that the Secretary failed to use "appropriate data" as mandated by the Medicare Act.  As the Secretary argues, YNH's substantive <u>ultra</u> <u>vires</u> challenge focuses on the manner in which the Secretary

exercised his statutory authority to select "appropriate data," rather than whether he had statutory authority to select appropriate data.  See Reply in Supp. at 8.

The Medicare Act grants broad discretion to the Secretary to choose appropriate data, and it is not "patently" clear that his choice to use data from only the surviving hospital in a merger was contrary to statutory authority.  See 42 U.S.C. § 1395ww(r)(2)(C)(i); DCH, 257 F.Supp.3d at 95 (denying similar claim because "the terms of the statute . . . unquestionably give[ ] the Secretary wide latitude to formulate the estimate figure . . . [and] it is far from apparent that it was inappropriate . . . to restrict the underlying data to a single hospital's provider number").  Because the Secretary clearly had broad authority to make substantive decisions as to the data underlying his estimates, the court does not have jurisdiction to review YNH's substantive ultra vires challenge to the Secretary's actions.

YNH also argues that the Secretary promulgated the 2014 Merged Hospital Policy in a manner that patently violated the Medicare Act's procedural requirements. See Mem. in Opp. at 26.  The Secretary responds, arguing that "the Secretary concededly had the requisite statutory authority to make Factor Three estimates." Reply in Supp. at 8.  YNH does not argue that the Secretary lacked authority to promulgate rules, regulations, and policies meant to carry out the duty to calculate DSH payments.  Rather, YNH takes issue with the procedure the Secretary used in establishing a particular policy.  In this regard, YNH's procedural ultra vires claim is duplicative of its argument that the FFY 2014 Merged Hospital Policy is procedurally unlawful, a claim over which this court has jurisdiction.  The D.C. Circuit has cautioned that ultra vires claims may not be brought unless "there is no alternative procedure for

review of the statutory claim." DCH II, 925 F.3d at 509 (citing Nyunt v. Chairman, Broad. Bd. of Governors, 589 F.3d 445, 449 (D.C. Cir. 2009)).  Because the claims are duplicative, YNH's procedural ultra vires claim is dismissed.

       C.     Mandamus and All Writs Act (Counts IV and V)

In Count Four, YNH seeks a Writ of Mandamus, pursuant to section 1361 of title 28 of the United States Code.  See Compl. ¶ 68.  In Count Five, the Hospital seeks relief pursuant to the All Writs Act, section 1651 of title 28 of the United States Code. See id. ¶ 70.  As to the Writ of Mandamus, the Secretary argues that YNH may not evade the preclusion statute by restyling its challenge as a mandamus action.  Mem. in Supp. at 24.  The court agrees that, insofar as YNH seeks to challenge actions this court is otherwise precluded from reviewing, it may not do so by mandamus.  Moreover, insofar as the challenge is to the Secretary's choice of data, or the formulation of the estimate, those decisions are discretionary, and therefore not subject to mandamus review, even absent the preclusion statute.  "The common-law writ of mandamus, as codified in 28 U.S.C. § 1361, is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."  Heckler v. Ringer, 466 U.S. 602, 616 (1984).  As to the challenged nondiscretionary duties, namely the procedural requirements of the Medicare Act and APA, the court has determined it has jurisdiction to hear those claims, and jurisdiction pursuant to the mandamus statute is superfluous.

As to YNH's claim under the All Writs Act, see Compl. ¶ 70, YNH again attempts to circumvent the preclusion statute by challenging through a separate statute the

Secretary's "calculat[ion of] the Hospital's FFY 2014 UC DSH payment without including the HSR data." Id. The All Writs Act does not confer an independent basis of jurisdiction; it merely provides a tool courts use in cases over which jurisdiction is conferred by some other source. United States v. Tablie, 166 F.3d 505, 506–07 (2d Cir. 1999). The court is therefore without jurisdiction to address YNH's claims brought pursuant to the mandamus statute and the All Writs Act.

D.    Constitutional Claims (Count VI)

Finally, YNH alleges constitutional claims under the separation of powers and due process clauses of the United States Constitution. Compl. ¶ 72. However, YNH fails to elaborate in any way how the separation of powers clause would give this court jurisdiction over its claims. Moreover, as to the due process claim, YNH has not alleged that it had any liberty or property interest sufficient to support such a claim. See Compl. ¶ 72; Perry v. McDonald, 280 F.3d 159, 173 (2d Cir. 2001) ("In evaluating due process claims, the threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." (internal quotations and alterations omitted)). In this regard, YNH has failed to state a claim upon which relief may be granted.

E.    Motion to File Sur-Reply

YNH seeks leave to file a sur-reply. See Motion for Leave to File Sur-Reply (Doc. No. 26). YNH argues that the Secretary made "two new arguments" in his Reply: first, that accepting YNH's arguments would threaten "significant uncertainty and disruption" to the DSH scheme, and second, that accepting YNH's arguments would lead to a "flood of cases" challenging UC DSH payments. See Proposed Sur-Reply

(Doc. No. 26-1) at 4.[6]  The Secretary responds that "neither issue was raised for the first time in the Secretary's Reply.  <u>See</u> Opposition to Motion for Leave to File Sur-Reply (Doc. No. 27) at 1.  A cursory review of the filings indicates that the Secretary raised the potential for disruption in his initial Memorandum in Support.  <u>See</u> Mem. in Supp. at 19– 20 (arguing that "any alternative system—permitting challenges to the Secretary's prospective DSH estimates—could result in significant uncertainty and disruption to the overall DSH program").

As to the Secretary's citation, in his Reply, to cases supporting an argument that this case might lead to a flood of cases challenging UC DSH payments, that argument was a direct response to YNH's Opposition brief.  In its Opposition, YNH argued that "the Secretary did not identify, nor could he, a flood of cases challenging UC DSH payments." Mem. in Opp. at 34.  In his Reply, the Secretary cited to a number of recent cases, noting that "[YNH's] lawsuit is the third one based solely on the Secretary's FY2014 DSH calculations[,] and more recently, hundreds of hospitals have filed complaints relating to their DSH calculations."  <u>See</u> Gov. Reply at 10.  That the Secretary responded to an argument made in YNH's opposition with citation to cases not cited in the initial brief, does not entitle YNH to file a <u>sur-reply</u>.  To hold otherwise would provide for endless sur-replies.

Because YNH has failed to show good cause to file a sur-reply, the Motion for Leave to File a Sur-Reply is denied.[7]

---

[6] Page numbers cited in reference to the Proposed Sur-Reply are those created by the court's electronic filing system.

## VI.    CONCLUSION

For the foregoing reasons, YNH's Motion for Leave to file a Sur-Reply (Doc. No. 26) is **DENIED**.  The Secretary's Motion to Dismiss (Doc. No. 16) is **GRANTED** as to Counts One, Three, Four, Five, and Six.  The Motion to Dismiss is **DENIED** as to Count Two, insofar as YNH alleges that the Secretary's promulgation of the FFY 2014 Merged Hospital Policy—outside of the requirements of notice and comment of the Medicare Act and APA—was unlawful.

**SO ORDERED.**

Dated at New Haven, Connecticut this 25th day of July 2019.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[7] A further basis to deny YNH's Motion for Leave to File a Sur-Reply is that the court afforded the parties oral argument after briefing, and YNH therefore had a full opportunity to raise its arguments before the court.